**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

MARC ALAN REICHBART and MICHAEL B. GARTNER, individually, and on behalf of all others similarly situated,

Plaintiffs,

v. Case No. 1:26-cv-23441-RKA

HEAR.COM LLC,

Defendant.

---

**DEFENDANT'S MOTION TO COMPEL INDIVIDUAL ARBITRATION**

**TABLE OF CONTENTS**

INTRODUCTION .......... 1
STATEMENT OF RELEVANT FACTS .......... 2
A. HEAR.COM'S WEBSITE AND MOBILE COMMUNICATION SIGN-UP PROCESS .......... 2
B. THE HEAR.COM TERMS AND ARBITRATION AGREEMENT .......... 4
C. DESPITE COMPLETING THE QUESTIONNAIRE AND ASSENTING TO HEAR.COM'S ARBITRATION AGREEMENT, PLAINTIFFS FILED THIS SUIT .......... 4
LEGAL STANDARD .......... 5
ARGUMENT .......... 6
A. THE FAA GOVERNS HEAR.COM'S ARBITRATION AGREEMENT .......... 6
B. PLAINTIFFS FORMED A BINDING AGREEMENT TO ARBITRATE. .......... 6
C. WHETHER THE ARBITRATION AGREEMENT ENCOMPASSES THIS DISPUTE IS RESERVED FOR THE ARBITRATOR. .......... 9
D. THIS ACTION SHOULD BE STAYED PENDING ARBITRATION .......... 11
CONCLUSION .......... 11

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
513 U.S. 265 (1995) .... 6

*American Express Co. v. Italian Colors Restaurant*,
570 U.S. 228 (2013) .... 6

*Bazemore v. Jefferson Capital Systems, LLC*,
827 F.3d 1325 (11th Cir. 2016) .... 6

*Bell v. Royal Seas Cruises, Inc.*,
2020 WL 5742189 (S.D. Fla. 2020) .... 7

*Dean Witter Reynolds Inc. v. Byrd*,
470 U.S. 213 (1985) .... 6

*Derriman v. Mizzen & Main LLC*,
710 F. Supp. 3d 1129 (M.D. Fla. 2023) .... 7

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) .... 9

*Johnson Law Group v. Elimadebt USA, LLC*,
2010 WL 11558229 (S.D. Fla. 2010) .... 10, 11

*Kennedy v. Floridian Hotel, Inc.*,
998 F.3d 1221 (11th Cir. 2021) .... 2

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
460 U.S. 1 (1983) .... 6, 11

*Newell Rubbermaid Inc. v. Storm*,
2014 WL 1266827 (Del. Ch. 2014) .... 7

*Pizarro v. QuinStreet, Inc.*,
2022 WL 3357838 (N.D. Cal. 2022) .... 7

*Preston v. Ferrer*,
552 U.S. 346 (2008) .... 6

*Shea v. BBVA Compass Bancshares, Inc.*,
2013 WL 869526 (S.D. Fla. 2013) .... 2

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) .... 6

*Terminix International Co., LP v. Palmer Ranch Ltd. Partnership*,
432 F.3d 1327 (11th Cir. 2005) .... 9

**Statutes**

9 U.S.C. § 2 ........................................................ 5, 6

9 U.S.C. § 3 ........................................................ 11

9 U.S.C. § 4 ........................................................ 5

**Other Authorities**

AAA Commercial Arbitration Rule R-7(a) ........................................................ 9

## INTRODUCTION

This putative class action should never have been filed in court. Plaintiffs admit that they each completed a questionnaire to receive mobile communications from Hear.com—a process that cannot be completed without agreeing to Hear.com's Terms and Conditions. Those Terms contain a binding arbitration agreement and class action waiver prohibiting disputes like this one from being brought in court. Indeed, they state explicitly, with heavily emphasized text in their very first section, that "**IF YOU SIGN UP TO RECEIVE MOBILE COMMUNICATIONS FROM HEAR.COM**, **THESE TERMS AND CONDITIONS WILL BECOME PART OF A LEGALLY BINDING AGREEMENT BETWEEN YOU AND HEAR.COM**" and "**MAY SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT, TO HAVE A JURY HEAR YOUR CLAIMS, OR TO PROCEED ON BEHALF OF OR AS PART OF A CLASS**."

Specifically, the Terms provide that "[a]ny controversy, dispute, or claim arising out of or relating to these hear.com Mobile Communications Terms and Conditions, the breach thereof, or mobile communications sent by or on behalf of hear.com … shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules." And that arbitration, the Terms explain, must be conducted solely on an individual—not a classwide—basis. What is more, the arbitration agreement also contains a delegation clause, which expressly commits to the arbitrator all questions regarding "the suitability of your or hear.com's claim for arbitration."

This Court should thus enforce the parties' agreement, compel individual arbitration, and stay this action pending completion of arbitration.

## STATEMENT OF RELEVANT FACTS

### A. HEAR.COM'S WEBSITE AND MOBILE COMMUNICATION SIGN-UP PROCESS

Hear.com operates a direct-to-consumer hearing care platform through its website. The website offers, among other things, an online hearing assessment questionnaire, through which users can explore hearing care services and ultimately provide contact information to receive mobile communications. Declaration of Meeta Jain ("Jain Decl.") ¶¶ 3–5.[1]

The Website is structured as a guided funnel. Users are encouraged to complete the questionnaire, which asks various questions to assess a user's hearing-aid needs, as a first step in engaging with Hear.com's services. Jain Decl. ¶ 6. As the final step in the questionnaire process, users are directed to the sign-up page, shown below in **Figure 1**, where they must provide their contact information and click a "Submit" button in order to proceed. Jain Decl. ¶ 7. No user can complete the questionnaire without encountering this page and clicking Submit. Jain Decl. ¶ 8.

[1] In evaluating this motion to compel arbitration, the Court is permitted to rely on evidence outside the pleadings. That is because "[m]otions to compel arbitration are treated generally as motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)," on the theory that they amount to a "factual attack" on jurisdiction as they "assert[] that a provision of an extrinsic document, an arbitration clause contained within the body of a contract, deprives the court of its power to adjudicate the plaintiff's claims." *Shea v. BBVA Compass Bancshares, Inc.*, 2013 WL 869526, at *2 (S.D. Fla. 2013). And in evaluating a "factual attack … challeng[ing] the existence of subject matter jurisdiction … extrinsic evidence may be considered" that goes beyond the pleadings. *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021).




**Figure 1.** hear.com sign-up page

The screen explains the consequences of clicking the Submit button in a disclosure located immediately beneath it. Clicking the button, that text explains, "authorize[s] and request[s] hear.com, its affiliate hearing-aid-advice.com, & their partners … to call or text you at the phone number you've provided for marketing & related purposes." It further states that by clicking a user "also agree[s] to [Hear.com's] Privacy Policy and Terms & Conditions." Jain Decl. ¶ 11, Ex. A. As indicated by their underlined text, "Privacy Policy" and "Terms & Conditions" were displayed as hyperlinks that direct the user to the full text of those respective documents. Jain Decl. ¶¶ 12–13. Other than these elements, there is little else on this page—just a single data-entry field for the user's phone number—which is free of extraneous content, advertising, or other material that would divert the user's attention from the disclosure. Jain Decl. ¶ 10.

### B. THE HEAR.COM TERMS AND ARBITRATION AGREEMENT

At the time Plaintiffs visited the website, the operative Terms and Conditions were those updated on April 9, 2018. Jain Decl. ¶ 13. Section H of those Terms set forth a comprehensive arbitration agreement providing:

> Any controversy, dispute, or claim arising out of or relating to these hear.com Mobile Communications Terms and Conditions, the breach thereof, or mobile communications sent by or on behalf of hear.com—including the suitability of your or hear.com's claim for arbitration—shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules.

Jain Decl. ¶ 13, Ex. B.

The Terms also explained that any such arbitration must be conducted solely on an individual basis, and that "[n]o arbitration brought under, or with respect to, this Section is to be joined to an arbitration involving any other party subject to these Mobile Terms, whether through class arbitration proceedings or otherwise." Jain Decl. ¶ 13, Ex. B; *see also id.* ("Unless hear.com and you mutually agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative, private attorney general, or class proceeding."); *id.* ("The arbitrator may award money or equitable relief in favor of only the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim.").

The Terms further provide that they are to be governed by Delaware law, and that Sections H through K—which include the arbitration agreement and the choice-of-law provision—"shall survive any termination of these Mobile Terms by either hear.com or you." Jain Decl. ¶ 20, Ex. B.

### C. DESPITE COMPLETING THE QUESTIONNAIRE AND ASSENTING TO HEAR.COM' S ARBITRATION AGREEMENT, PLAINTIFFS FILED THIS SUIT

Hear.com's business records indicate that both Plaintiffs completed the website

questionnaire, including by clicking the Submit button on the sign-up page pictured in **Figure 1**, thereby agreeing to Hear.com's Terms. Jain Decl. ¶¶ 14–17. Specifically, Hear.com's records identified as relating to Plaintiff Reichbart reflect completion of the sign-up process on or about September 4, 2024 as well as on four additional occasions in 2024 and three occasions in 2025. Jain Decl. ¶ 15. Plaintiff Gartner completed the sign-up process on or about September 30, 2024 and nine additional times between January 2025 and April 2026. Jain Decl. ¶ 16. These records are generated only when a user clicks the Submit button on the sign-up page—and could not exist unless each Plaintiff traversed the sign-up interface containing the Terms & Conditions disclosure and clicked Submit. Jain Decl. ¶ 17.

Nevertheless, on May 15, 2026, Plaintiffs filed this putative class action in federal court. Their complaint alleges that Hear.com deployed tracking technologies on its website that intercepted the electronic communications they engaged in as they signed up for mobile communications from Hear.com, in violation of the Florida Security of Communications Act, the Electronic Communications Privacy Act, and principles of unjust enrichment.

## LEGAL STANDARD

Section 4 of the Federal Arbitration Act (FAA) permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court … for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2.

This statutory language "embodies a liberal federal policy favoring arbitration agreements," which "creates a presumption of arbitrability such that any doubts concerning the

scope of arbitrable issues should be resolved in favor of arbitration." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Federal courts must thus "rigorously enforce arbitration agreements." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). This "national policy favoring arbitration" supersedes "state [law] attempts to undercut the enforceability of arbitration agreements." *Preston v. Ferrer*, 552 U.S. 346, 353 (2008). In particular, plaintiffs may not avoid an arbitration agreement simply because it contains a class action waiver. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011).

## ARGUMENT

### A. THE FAA GOVERNS HEAR.COM'S ARBITRATION AGREEMENT.

The FAA governs this dispute. By its terms, the FAA extends to any "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. That is certainly true of the Hear.com Terms, as Hear.com is a nationwide company and the Terms govern transactions occurring through its website. *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277–82 (1995) (FAA governs agreements to arbitrate that involve national companies due to necessary involvement of interstate commerce). And no exception applies.

### B. PLAINTIFFS FORMED A BINDING AGREEMENT TO ARBITRATE.

There can be no serious dispute that website visitors like Plaintiffs agreed to the Terms—including their arbitration agreement—when they signed up to receive mobile communications

from Hear.com. Hear.com's business records reflect that each Plaintiff clicked the Submit button on the sign-up page in **Figure 1** on multiple occasions—the same page that informed them, in text immediately below that button: "By clicking 'Submit' you … agree to our Privacy Policy and Terms & Conditions." Jain Decl. ¶¶ 11, 15–17.

A valid and binding contract exists "if it manifests mutual assent by the parties"—i.e., if the parties had "reasonable notice, either actual or constructive, of the terms of the putative agreement," and "manifest[ed] assent to those terms." *Newell Rubbermaid Inc. v. Storm*, 2014 WL 1266827, at *6 (Del. Ch. 2014); *accord, e.g.*, *Derriman v. Mizzen & Main LLC*, 710 F. Supp. 3d 1129, 1139 (M.D. Fla. 2023) (similar).[2] In the context of contracts created by a consumer's interactions with a website, the inquiry focuses on whether the "hyperlink to the terms and conditions is [sufficiently] conspicuous." *Derriman*, 710 F. Supp. 3d at 1139. In particular, it concentrates on the "proximity" of the hyperlink to the action button, as well as the clarity of the "language" regarding the consequences of clicking the button, *Bell v. Royal Seas Cruises, Inc.*, 2020 WL 5742189, at *7 (S.D. Fla. 2020).

Here, the website presented Plaintiffs with a link to Hear.com's Terms in a sufficiently conspicuous manner to put them at least on inquiry notice. As courts have recognized, inquiry notice is created where (as here) a website includes plain language directly adjacent to an action button, explaining that by clicking the button a user will assent to the website's terms. *Bell*, 2020 WL 5742189, at *7; *Derriman*, 710 F. Supp. 3d at 1139; *see also, e.g.*, *Pizarro v. QuinStreet, Inc.*, 2022 WL 3357838, at *3-*4 (N.D. Cal. 2022) (enforcing arbitration agreement where interface contained hyperlink to terms in disclosure directly below button). And as shown above in **Figure**

[2] The Terms provide that they are to be governed by Delaware law. But because Florida and Delaware law are materially the same on this point, the Court need not definitively resolve the choice-of-law question here, as the result is the same under either state's law.

**1**, that is exactly the case with Hear.com's website: The relevant interface is uncluttered—consisting of a single input field for a phone number, a Submit button, and disclosure text directly below. Jain Decl. ¶ 10, Ex. A. The page contains no extraneous content, advertising, or visual clutter that would divert the user's attention from the disclosure. Jain Decl. ¶ 10. And the disclosure text explicitly informed the user that clicking "Submit" constituted agreement to the Terms, which were provided by a hyperlink that was underlined and visually distinct from the surrounding text, making it immediately identifiable as a clickable link. Jain Decl. ¶¶ 11-12, Ex. A. Under these circumstances, a reasonably prudent user would have been placed on inquiry notice of the Terms, and hence will be bound by them if they clicked the "Submit" button.

Hear.com's records establish that each Plaintiff did exactly that. ***See*** Jain Decl. ¶¶ 15–16. Thus, the evidence is clear that each Plaintiff manifested affirmative assent to Hear.com's Terms, including its mandatory arbitration agreement.

Plaintiffs cannot avoid this conclusion with their conclusory allegation that users "are not required to affirmatively agree to Hear.com's Privacy Policy, HIPAA Notice, or Terms and Conditions before completing the Questionnaire." Compl. ¶ 90. As shown above, that is simply untrue—a user is presented with the link to the Hear.com Terms during the questionnaire process, and cannot complete that process without affirmatively manifesting their agreeing to them (by clicking the "Submit" button in **Figure 1**), as Hear.com's records indicate both Plaintiffs did here. In fact, Plaintiffs themselves seem to recognize this, admitting elsewhere that "at the very final stage of the Questionnaire," the Website displays a "reference to Hear.com's … Terms and Conditions." Compl. ¶ 65. There is thus no basis for concluding that Plaintiffs did not assent to Hear.com's Terms, including their arbitration agreement.

### C. WHETHER THE ARBITRATION AGREEMENT ENCOMPASSES THIS DISPUTE IS RESERVED FOR THE ARBITRATOR.

After the issue of contract formation, there is nothing more for this Court to decide; all other questions—including whether Plaintiffs' claims fall within the scope of the arbitration agreement—must be left for the arbitrator. As the Supreme Court has explained, where parties have agreed to delegate arbitrability to the arbitrator, a court possesses "no power to decide the arbitrability issue" and must compel arbitration "even if the court thinks that the argument that the arbitration clause applies to a particular dispute is wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019). Here, the Terms expressly provide that any controversy "arising out of or relating to … the suitability of your or hear.com's claim for arbitration" must be resolved by the arbitrator. Jain Decl., Ex. B. In so doing, they thus expressly delegate questions of arbitrability, and foreclose any role for the Court in deciding that issue.

The incorporation of AAA rules reinforces this conclusion. As the Eleventh Circuit has explained, when parties "incorporat[e] the AAA Rules … into their agreement, the parties clearly and unmistakably agree[] that the arbitrator should decide" issues of arbitrability. *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) (collecting cases). That is because the AAA Rules expressly provide that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." AAA Commercial Arbitration Rule R-7(a). Incorporation of the AAA Rules thus necessarily involves agreement to allow the arbitrator decide questions of arbitrability. Here, the arbitration agreement in the Hear.com Terms does exactly that, stating that all arbitration shall be "administered by the American Arbitration Association under its Commercial Arbitration Rules." Jain Decl., Ex. B. Accordingly, even absent the express

delegation clause, any issues of arbitrability must be left for the arbitrator, not decided by this Court.

But even if the Court were to itself consider arbitrability, the result would be the same, as Plaintiffs' claims fall squarely within the arbitration agreement. The Terms require arbitration of "[a]ny controversy, dispute, or claim arising out of or relating to these hear.com Mobile Communications Terms and Conditions, the breach thereof, or mobile communications sent by or on behalf of hear.com." Jain Decl., Ex. B. This language is broad and disjunctive: it covers any claim that arises out of or relates to the Terms or mobile communications sent by or on behalf of Hear.com. Courts have long recognized that "arising out of or relating to" language is "broad" and should be read to apply to all "disputes connected to" the specified subject matter. ***Johnson L. Grp. v. Elimadebt USA, LLC***, 2010 WL 11558229, at *2 (S.D. Fla. 2010). For instance, an agreement requiring arbitration of "all claims 'arising out of or relating to' [a] contract" will result in arbitration not just of claims brought under the contract, but all claims that "have their roots in the relationship created by the contract." ***Id.*** at *3. Importantly, when a court encounters such a "broad arbitration clause, as it does here, it should follow the presumption of arbitration and resolve doubts in favor of arbitration." ***Id.***

Plaintiffs' claims fall within the scope of the Terms' arbitration agreement because they arise out of and relate to the Terms themselves. The Terms govern the relationship created when Plaintiffs signed up on the website—the very same sign-up process through which the alleged tracking occurred. The Complaint alleges that Hear.com's tracking technologies intercepted users' communications "in real time" as users completed the questionnaire and sign-up flow on the website. Compl. ¶ 46. Plaintiffs' claims thus arise from the same course of conduct that brought the Terms into existence, and thus directly "have their roots in the relationship created by the

contract." *Johnson L. Grp.*, 2010 WL 11558229, at *3.

What is more, Plaintiffs' claims also arise out of or relate to mobile communications sent by or on behalf of Hear.com. Indeed, Plaintiffs allege that their claims arise out of data collection that occurred on the website "when users enter their contact information at the end of the Questionnaire to receive their results," Compl. ¶31—i.e., when users sign up for mobile communications. Plaintiffs' claims thus directly arise out of and relate to those mobile communications.

Accordingly, even if the Court were to consider the question itself (which it should not), Plaintiffs' claims plainly fall within the scope of the arbitration agreement—especially after taking into account the strong federal presumption in favor of arbitrability requiring all doubts to be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

### D. THIS ACTION SHOULD BE STAYED PENDING ARBITRATION

The FAA mandates that a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Because all of Plaintiffs' claims are subject to arbitration, this action—including discovery and resolution of the motion to dismiss filed contemporaneously herewith—should be stayed pending completion of individual arbitration.

## CONCLUSION

For the foregoing reasons, this Court should compel Plaintiffs to submit their claims to binding, individual arbitration pursuant to the Arbitration Agreement in Hear.com's Terms and should stay all proceedings pending the completion of individual arbitration.

Dated: July 10, 2026

Respectfully submitted,

ORRICK, HERRINGTON, & SUTCLIFFE LLP

*/s/ Diana Fassbender*
Rebecca Harlow, Esq.
Admitted *pro hac vice*
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: 415-773-5700
Email: rharlow@orrick.com

Diana Marie Fassbender
Florida Bar No. 17095
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
215 NW 24th St. Suite 200
Miami, Florida 33127
Telephone: 305-913-1930
Email: dszego@orrick.com