**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

MARC ALAN REICHBART and
MICHAEL GARTNER, individually,
and on behalf of all others similarly situated,

*Plaintiffs*,

**Case No. 26-cv-23441-RKA**

vs.

HEAR.COM, LLC,

*Defendant*.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION**
**TO COMPEL INDIVIDUAL ARBITRATION**

# TABLE OF CONTENTS


INTRODUCTION ....................................................................................................1

STATEMENT OF FACTS ......................................................................................2

A. The Nature of Plaintiffs' Claims ......................................................................2

B. Plaintiffs Never Agreed to Arbitration with Hear.com ....................................4

1. The sign-up page appeared only at the end of the questionnaire. ....................4

2. The "Submit" button sat above the disclosure and the hidden hyperlink so a user would click before ever reaching the fine print. ....................4

3. The hyperlink to the Mobile Terms is in small, gray, underlined text indistinguishable from the surrounding fine print. ....................6

4. The fine print does not mention arbitration, a class-action waiver, or a jury-trial waiver...6

5. Plaintiffs never opened, read, or agreed to the arbitration terms. ....................7

C. The Mobile Terms Only Govern a Mobile Messaging Relationship ....................7

ARGUMENT ........................................................................................................8

I. HEAR.COM FAILS TO MEET ITS BURDEN TO SHOW PLAINTIFFS FORMED AN AGREEMENT TO ARBITRATE ....................8

A. The Arbitration Clause Is Unenforceable as a Browsewrap Because the Hyperlinked Terms Are Not Reasonably Conspicuous ....................10

B. The "Submit" Button Does Not Create an Enforceable Clickwrap Agreement ....................12

II. THE COURT SHOULD DENY THE MOTION BECAUSE THE ARBITRATION PROVISION, INCLUDING ITS DELEGATION CLAUSE, DOES NOT COVER PLAINTIFFS' WIRETAP CLAIMS ....................14

A. The Delegation Clause Is Limited in Scope, so the Court Must Decide Whether It Reaches Plaintiff's Claims ....................15

B. Plaintiff's Wiretap Claims Are Outside the Scope of the Delegation Agreement ....................16

C. Incorporation of the AAA Rules Does Not Require Delegation Because the Limited-Scope Language Governs the General AAA Rule Providing the Arbitrator with Authority to Determine Arbitrability ....................18

D. Because Plaintiffs' Claims Fall Outside the Arbitration Agreement, the Court Should Deny the Motion ....................19

CONCLUSION ....................................................................................................20

Plaintiffs Marc Alan Reichbart and Michael B. Gartner ("Plaintiffs") hereby respond in opposition to the Motion to Compel Individual Arbitration ("Motion") filed by Defendant Hear.com, LLC ("Hear.com").

## INTRODUCTION

This putative class action concerns Hear.com's interception of sensitive health, financial, and personal information submitted through its website and its disclosure of that information to advertising platforms for commercial advantage. Consumers like Plaintiffs seeking help for hearing loss are funneled through an online questionnaire that solicits intimate medical and financial details. Third-party tracking tools transmit those answers in real time, without users' knowledge or consent, in violation of the Florida Security of Communications Act and the federal Electronic Communications Privacy Act.

In a Motion inconsistent with their sworn discovery responses, Hear.com seeks to compel arbitration by invoking an arbitration provision contained in a document titled the "hear.com Mobile Communications Terms and Conditions." But Hear.com has not shown that Plaintiffs agreed to those Mobile Terms. The only reference to them appeared in small text beneath the operative "Submit" button at the end of a questionnaire, without a checkbox, without any separate act of assent, and without any mention of arbitration, a class-action waiver, or a jury-trial waiver. Under the Eleventh Circuit's recent decision in *Tejon v. Zeus Networks, LLC*, and this Court's materially similar decision in *Valiente v. Nextgen Global, LLC*, that design did not provide reasonably conspicuous notice of an agreement to arbitrate. 174 F.4th 1322, 1326 (11th Cir. 2026); No. 22-cv-22480-ALTMAN/Reid, 2023 WL 6213583 (S.D. Fla. Sept. 25, 2023); *aff'd*, No. 23-13308, 2025 WL 3140480 (11th Cir. Nov. 10, 2025) (per curiam).

The Motion fails for a second, independent reason. Even assuming assent, the Mobile Terms govern a future calling and text-messaging relationship, not Hear.com's interception of private communications. Hear.com's argument relies on delegation language embedded in an arbitration clause limited to controversies arising out of the Mobile Terms, their breach, or "mobile communications sent by or on behalf of hear.com." Plaintiffs' claims concern data transmitted by users to Hear.com and its trackers *before* any call or text was sent. They therefore fall outside both the limited delegation and the underlying arbitration provision, and incorporation of the AAA Rules cannot enlarge the category of disputes the parties agreed to arbitrate.

The Court should deny the Motion because Hear.com has not carried its burden to establish an agreement to arbitrate and, even if it had, Plaintiffs' website-interception claims are outside the scope of the Mobile Terms.

## STATEMENT OF FACTS

### A. The Nature of Plaintiffs' Claims

This is a privacy case about Hear.com's alleged interception of sensitive health, financial, and personal information, which it shares with advertisers without consumers' consent. *See* ECF No. 1 ("Compl.") ¶¶ 1, 4–5. Plaintiffs Marc Alan Reichbart and Michael B. Gartner are Florida residents who, like millions of Americans worried about their hearing, went to Hear.com's website seeking help. *Id.* ¶¶ 1–2, 11–12. Hear.com, one of the largest direct-to-consumer hearing-care platforms in the country, invites the hearing-impaired to complete an online hearing assessment questionnaire (the "Questionnaire") and an online hearing test (the "Hearing Test") to learn about their hearing loss and reserve a "risk-free" hearing-aid trial. *Id.* ¶¶ 2–3, 40–41. The Questionnaire is the centerpiece of the site, promoted on virtually every page and presented as the first step in obtaining care. *Id.* ¶¶ 3, 43. To complete it, visitors must reveal intimate facts about themselves:

their hearing-loss history and hearing-aid use, whether they suffer from tinnitus, how urgently they need care, their credit score, the identity and type of their health insurance, their employment and retirement status, and their status as a military veteran. *Id.* ¶¶ 3, 44–45. What visitors do not know is that Hear.com has embedded six third-party tracking tools—operated by Google, TikTok, Microsoft, and X Corp. ("Twitter/X")—that silently intercept their communications with the website and transmit them, in real time, to those companies. *Id*. ¶¶ 4, 46.

The most sensitive transmissions occur as users answer the Questionnaire: each individual answer—every medical disclosure, every financial detail—is fired off to the trackers, coupled with persistent identifying cookies that tie those answers to the specific user. *Id.* ¶¶ 46–47. The interceptions occur while the visitor is interacting with the website itself—as data flows *from* the visitor *to* Hear.com and its trackers. *Id*. ¶ 31. The purpose of the interception is to tie the consumer's private health information to persistent, unique identifiers the trackers assigned to each visitor's browser which reveals who was seeking hearing care and what they disclosed. *Id*. ¶¶ 8, 94–96. That is protected health information disclosed for commercial advantage in violation of Florida and federal law. *Id*.

Plaintiffs reasonably believed their communications with a hearing-care provider were private, between themselves and Hear.com alone; they never agreed to have those communications routed to advertising and technology companies for commercial gain. *Id.* ¶¶ 64, 103. On that basis, Plaintiffs brought this putative class action on May 15, 2026, asserting three claims—violation of the Florida Security of Communications Act ("FSCA"), Fla. Stat. § 934.01 *et seq.*; violation of the federal Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511 *et seq.*; and unjust enrichment. *Id*. ¶¶ 6, 9, 127–152. As Hear.com admits, none of these claims concerns any telephone call or text message. *See* Ex. 1 (Def.'s Resp. to Pls.' First Set of Reqs. for Admis.

("RFA")) No. 13. The claims turn entirely on what Hear.com and its trackers *took* from Plaintiffs as they used the website, not on anything Hear.com later *sent* to them. *See* Compl. ¶¶ 46, 100–103.

### B. Plaintiffs Never Agreed to Arbitration with Hear.com

Hear.com does not contend that Plaintiffs ever read, saw, or signed an arbitration agreement. Its Motion rests entirely on the theory that Plaintiffs are *deemed* to have agreed to a document titled "hear.com Mobile Communications Terms and Conditions ('Mobile Terms')"—buried behind a hyperlink—simply because they clicked a button labeled "Submit" at the end of a hearing questionnaire. Mot. at 6–9; ECF No. 20-1 ("Jain Decl.") ¶¶ 7–18.

#### 1. The sign-up page appeared only at the end of the questionnaire.

By Hear.com's own account, its website is "structured as a guided funnel" that pushes users to complete the hearing questionnaire "as a first step," and the sign-up page is "the final step a user must complete" at the end of that process. Jain Decl. ¶¶ 6–7; *accord* Compl. ¶¶ 41, 65. Users encounter the Mobile Terms nowhere before the signup page. *See* RFA No. 11 (admitting "a link to the Terms does not appear within the questionnaire on any page prior to the Sign-Up Page"). By the time the questionnaire directs a user to the sign-up page, the user has already answered the health questions at issue in this suit. *See* Compl. ¶¶ 5, 46, 65; Jain Decl. ¶¶ 6–7.

#### 2. The "Submit" button sat above the disclosure and the hidden hyperlink so a user would click before ever reaching the fine print.

Hear.com validates Plaintiffs' testimony that they both used their mobile phones to access the sign-up page. *Compare* Ex. 4 (Declaration of Marc Alan Reichbart ("Reichbart Decl.")) ¶ 2 and Ex. 5 (Declaration of Michael Gartner ("Gartner Decl.")) ¶ 2 *with* Ex. 2 (Def.'s Resp. to Interrogs. ("Rogs")) No. 1. Thus, Plaintiffs did not encounter Exhibit A to the Jain Declaration—which depicts the sign-up page on a desktop version of the website—but the mobile sign-up page produced in response to Plaintiff's requests for production. *See* Ex. 3 (HEAR-0000006).

Hear.com does not dispute that Plaintiffs were on mobile devices; it simply has not produced the mobile rendering they actually encountered. *See* Rogs. Nos. 1–2 (admitting Hear.com does not "collect or retain versions or templates" of the page served on any given visit). The one document in the record depicting the mobile page shows the disclosure and links compressed into small gray text stacked beneath the Submit button—even less conspicuous than the desktop image Hear.com submitted. *See* Ex. 3. The top of the sign-up page reads "You're almost done!" in large text behind a blue background. *Id.* Below, in even larger font, it states, "Enter your mobile phone number to reserve your no-risk hearing aid trial"; immediately below that is a large box in which the user is instructed to "Enter mobile phone number" and then click a large, colorful "Submit" button. *Id. Below* the "Submit" button comes the fine print. *Id.*

Hear.com uses a similar layout for computer users: a header, a prompt, a single field for a phone number, and then a prominent "Submit" button, with the disclosure text and the "Terms & Conditions" hyperlink appearing *below* that button. Jain Decl. ¶ 10 & Ex. A; Mot. at 7 (Fig. 1); RFA No. 1 (admitting "that, on the Sign-Up Page, the 'Submit' button was positioned above the Disclosure Text and above the 'Terms & Conditions' hyperlink").

Users like Plaintiffs therefore reached the action button—and could complete the entire process—before encountering *any* disclosure. Moreover, Hear.com admits that "a user could click the 'Submit' button on the Sign-Up Page without the text of the Terms being displayed on the Sign-Up Page," and that no user was "required to click a box, check a box, or otherwise take any action affirmatively stating that the user agreed to the Terms before clicking the 'Submit' button." RFA Nos. 9, 10.

**3. The hyperlink to the Mobile Terms is in small, gray, underlined text indistinguishable from the surrounding fine print.**

The Disclosure Text below the "Submit" button is in a much smaller grey font than the text above. *See* Jain Decl. Ex. A; Ex. 3. Buried in the middle of a long paragraph about the ways Hear.com may call or text the user is a sentence stating, "You also agree to our Privacy Policy and Terms and Conditions." *Id.* While Hear.com states that the "Terms & Conditions" hyperlink directs users to a separate page containing "the arbitration agreement and class action waiver set forth in Section H" of the Mobile Terms, Jain Decl. ¶ 12, the hyperlink is not set off by the customary blue or green coloring that signals a clickable link. Ex. 3*; see* RFA No. 2 (admitting "that, on the Sign-Up Page, the 'Terms & Conditions' hyperlink was displayed in the same font color as the surrounding Disclosure Text (i.e., not in a contrasting blue font)").

The only thing distinguishing the link from the ordinary disclosure text was that it was underlined. Jain Decl. ¶ 12. The link thus sat, in small gray type, within a dense block of fine print concerning marketing calls and texts—exactly the kind of low-contrast presentation that fails to alert a reasonable user that a separate, binding contract lies behind it.

**4. The fine print does not mention arbitration, a class-action waiver, or a jury-trial waiver.**

The fine print tells users only that, by clicking "Submit," they authorize Hear.com and its partners "to call or text you at the phone number you've provided for marketing & related purposes," and that they "also agree to our Privacy Policy and Terms & Conditions." Jain Decl. ¶ 11. The fine print does *not* disclose that clicking "Submit" would surrender the user's most important procedural rights: Hear.com admits "that the Disclosure Text on the Sign-Up Page did not contain the word 'arbitration'" and "that the Disclosure Text on the Sign-Up Page did not state that a user waives the right to a trial by jury or the right to participate in a class action." RFA Nos. 3–4.

**5. Plaintiffs never opened, read, or agreed to the arbitration terms.**

Consistent with a design that never required users to view the Mobile Terms, Hear.com has no evidence that Plaintiffs ever did. It admits "that You have no record that Plaintiff Reichbart clicked the 'Terms & Conditions' hyperlink on the Sign-Up Page or otherwise viewed the Terms," and made the same admission as to Plaintiff Gartner. RFA Nos. 6, 7. The arbitration provision on which the entire motion depends is contained in Section H of a separate document, reachable only by clicking the gray underlined link. Jain Decl. ¶¶ 12–13 & Ex. B ("Mobile Terms"). There is no record that either Plaintiff ever went there.

In support of their opposition, Plaintiffs have submitted declarations confirming that they never opened, read, or agreed to the Mobile Terms, including the arbitration provision. *See* Exs. 4–5. Each Plaintiff states that: (1) "when completing the questionnaire, I did not click anything or check any box to consent to any terms and conditions"; (2) they "do not recall ever seeing a hyperlink to any terms and conditions on the Hear.com website"; (3) they "did not review any terms and conditions on the Hear.com website"; and (4) they "did not understand that, by submitting my phone number at the end of the questionnaire, I was agreeing to an arbitration clause or waiving my right to bring a class action lawsuit. I would be surprised to learn that I had done so." *Id.* ¶¶ 3–6.

**C. The Mobile Terms Only Govern a Mobile Messaging Relationship**

The only arbitration agreement Hear.com invokes is contained within a document titled "hear.com Mobile Communications Terms and Conditions ('Mobile Terms')." Jain Decl. ¶ 12 & Mobile Terms. The disclosure that supposedly binds Plaintiffs to the Mobile Terms is about telephone calls and text messages: it authorizes Hear.com and its partners "to call or text you at the phone number you've provided," warns that "[c]alls & texts may be made using automated

dialing or prerecorded voice technology." Jain Decl. ¶ 11; Rog. No. 4. Consistent with that text, the arbitration clause reaches only disputes "arising out of or relating to these hear.com Mobile Communications Terms and Conditions, the breach thereof, or mobile communications sent by or on behalf of hear.com." Jain Decl. ¶ 13 & Mobile Terms. This case is not about any of that.

## ARGUMENT

### I. HEAR.COM FAILS TO MEET ITS BURDEN TO SHOW PLAINTIFFS FORMED AN AGREEMENT TO ARBITRATE

"Before enforcing an arbitration agreement, the court should ensure that the agreement was formed and that it applies to the dispute at hand." *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1294 (11th Cir. 2022) (citing 9 U.S.C. §§ 3, 4). In "deciding whether the parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts." *Fiorentino v. Cantiere Delle Marche*, 744 F. Supp. 3d 1263, 1269 (S.D. Fla. 2024) (Altman, J.) (citation omitted). In doing so, the Court applies "a summary judgment-like standard." *Id.* (quoting *Bazemore v. Jefferson Cap. Sys*., LLC, 827 F.3d 1325, 1333 (11th Cir. 2016)). As such, "a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." *Bazemore*, 827 F.3d at 1333 (quoting Fed. R. Civ. P. 56(a)). If there is a genuine issue of material fact, courts cannot compel arbitration without a trial. *See id.*; 9 U.S.C. § 4.

"Under Florida law,[[1]] a contract is made when the three elements of contract formation are present: offer, acceptance, and consideration." *Fantis v. Flywheel Sports, Inc*., No. 18-24934-

[1] Florida law applies to the formation question. *See Farsian v. Alphalete Athletics, LLC*, No. 24-61027, 2025 WL 1591452, at * (S.D. Fla. Feb. 25, 2025). Hear.com cannot invoke the Delaware choice-of-law provision contained in the Mobile Terms until it first establishes that Plaintiffs agreed to the contract containing that provision. *See Cooper v. Meridian Yachts, Ltd*., 575 F.3d

CIV, 2019 WL 1582957, at *1 (S.D. Fla. Mar. 11, 2019), *R&R adopted*, No. 18-CV-24934-UU, 2019 WL 2245417 (S.D. Fla. Apr. 29, 2019). "The party asserting the existence of a contract has the burden of proving its existence and terms." *Bazemore*, 827 F.3d at 1330; *see also Fantis*, 2019 WL 1582957, at *2 ("the party seeking to compel arbitration" has "the burden of … establishing the contractual relationship necessary to implicate the FAA"). Further, any presumption in favor of arbitration "does not apply to disputes concerning whether an agreement to arbitrate has been made." *Id.* at 1329. The U.S. Supreme Court recently clarified that courts cannot adopt any "arbitration-preferring procedural rules" that "tilt the playing field in favor of (or against) arbitration." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713–14 (2022).

Online agreements fall along a spectrum. A "browsewrap" agreement "contains hyperlinked terms, and the user's consent is implied by continued use of the website"; it binds a consumer only where the consumer has actual knowledge of the terms or where the hyperlink is conspicuous enough to put a reasonably prudent person on inquiry notice. *Tejon v. Zeus Networks, LLC*, 174 F.4th 1322, 1326 (11th Cir. 2026) (quoting *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. 3d DCA 2018)). A "clickwrap" agreement requires the user to check a box or click a button specifically acknowledging acceptance. *Id*. While Hear.com purported to bind users by having them click "submit" at the end of the questionnaire, it relied solely on Plaintiffs' browsing of the hyperlinked Mobile Terms to provide notice of a purportedly binding arbitration clause. That does not result in the formation of a contract. And formation is antecedent to everything else: before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists, so assent must be resolved before any term of the Mobile Terms—

---

1151, 1169 (11th Cir. 2009). In any event, Defendant concedes that Florida and Delaware law are interchangeable on the formation question. *See* Mot. at 11.

including the delegation clause—can operate. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 149 (2024). Further, even if the Court considered Hear.com's arbitration "clickwrapped," Hear.com fails to meet its burden of showing Plaintiffs agreed to arbitrate. *See Valiente*, 2023 WL 6213583 (denying motion to compel arbitration under both the browsewrap and clickwrap theories based on materially similar facts).

### A. The Arbitration Clause Is Unenforceable as a Browsewrap Because the Hyperlinked Terms Are Not Reasonably Conspicuous

The arbitration provision does not appear on Hear.com's sign-up page. It sits within a separate "Terms & Conditions" page reachable only through a hyperlink the user need not click—the classic browsewrap posture. Such an agreement binds a consumer only if the "hyperlink … is conspicuous enough to put a reasonably prudent person on inquiry notice." *Tejon*, 174 F.4th at 1326. Conspicuousness turns on "the general design and content of the page containing the hyperlink," including "the location of the hyperlink on the page, its proximity to buttons the user must click, and its font size, format, and color." *Id*. at 1326–27. Hear.com's hyperlink fails that test on facts materially identical to those the Eleventh Circuit held insufficient in *Tejon*.

In *Tejon*, the defendant placed a "small, gray," underlined "Terms of Service" hyperlink—leading to a page containing a mandatory arbitration clause—beneath the action buttons the user had to click. *Id*. at 1324, 1327. The Court held that was not conspicuous, for three reasons that apply here verbatim. ***First***, placement: "When important terms are placed below a highly conspicuous action button, it is not reasonable to assume that users will continue scrolling past the action button." *Id*. at 1327. Hear.com's Exhibit A shows the "Terms & Conditions" link below the "Submit" button, exactly as in *Tejon; accord Goldstein v. Fandango Media, LLC*, 2021 WL 6617447, at 3 (S.D. Fla. July 27, 2021) (finding even a blue link fails when placed beneath the action button). ***Second***, font: the *Tejon* link was "printed in a small font," "easy to overlook given

the larger font sizes and bolder colors of other elements on the page," and, "[a]lthough 'Terms of Service' [was] underlined …, it [was] otherwise indistinguishable from the informational text of the same size and color surrounding it." 174 F.4th at 1327. Hear.com's "Terms & Conditions" link is likewise underlined but rendered in the same small gray font as the surrounding disclosure. ***Third***, color: because the link "appear[ed] in a dim, gray color," it was not conspicuous, for "[s]imply underscoring words or phrases ... will often be insufficient to alert a reasonably prudent user that a clickable link exists," the "customary design elements" being "a contrasting font color (typically blue) and the use of all capital letters." *Id*. at 1327–28 (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022)). Hear.com's link is neither.

Hear.com's assertion that the link was "underlined and visually distinct from the surrounding text, making it immediately identifiable as a clickable link," Mot. 12; Jain Decl. ¶ 12, is precisely the argument *Tejon* rejected: underlining that leaves the text "otherwise indistinguishable" in size and color is not enough. 174 F.4th at 1327; *accord Farsian*, 2025 WL 1591452, at *4. Hear.com's emphasis on the page's "uncluttered" character, Mot. 7, 12, fares no better. Uncluttered pages support notice only when the link itself is conspicuous, as with the blue, underlined link on the "uncluttered" payment screen in *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017). Hear.com's link is gray, not blue; the absence of clutter cannot cure a link the reasonable user's eye is never drawn to. *See Tejon*, 174 F.4th at 1328 (distinguishing *Meyer*).

Finally, and as the Eleventh Circuit found "notabl[e]" in *Tejon*, Hear.com's page "simply does not say anything about arbitration." *Id*. "It would have been simple enough" for Hear.com "to state plainly that clicking on [the] button[] would subject any dispute … to binding arbitration," or to label the link "ARBITRATION AGREEMENT." *Id*. It did neither. A hyperlink to "Terms & Conditions" that never references the arbitration clause does not "sufficiently describe" that

collateral provision, so "a reasonable user would not be on inquiry notice of [the] arbitration provision, and thus, an agreement to arbitrate was never formed." *Goldstein*, 2021 WL 6617447, at 4. On *Tejon*'s controlling facts, no browsewrap agreement to arbitrate was formed.[2]

**B. The "Submit" Button Does Not Create an Enforceable Clickwrap Agreement**

Unable to bind Plaintiffs through a passive hyperlink, Hear.com pivots to affirmative assent, contending that Plaintiffs "manifested affirmative assent" by clicking "Submit." Mot. at 12. But this Court has already rejected that move on materially identical facts. In *Valiente*—an action in which the defendant argued the plaintiff agreed to arbitrate by clicking a "Go To Step #2" button *beneath* a disclosure stating that he "consent[ed]" to the defendant's program—Judge Altman held the design was not an enforceable clickwrap and denied the motion to compel; the Eleventh Circuit affirmed. 2023 WL 6213583, at *10–12. The same result follows here (though the "submit" button's placement *above* the hyperlink makes this case even stronger).

---

[2] Against these binding Eleventh Circuit authorities, Hear.com analogizes to a handful of district court cases to argue that the hyperlink was sufficiently conspicuous. *See* Mot. at 11–12. The factual differences between those cases and Hear.com's sign-up page further support the conclusion that an arbitration agreement was not formed here. *See Derriman v. Mizzen & Main LLC*, 710 F. Supp. 3d 1129, 1139 (M.D. Fla. 2023) (finding hyperlink to terms was conspicuous because "it was placed directly *above* the sign-up button and set off from the text below it in a box of its own") (emphasis added); *Bell v. Royal Seas Cruises, Inc.*, No. 19-CV-6075-RUIZ/STRAUSS, 2020 WL 5742189, at *7 (S.D. Fla. 2020) (same); *Newell Rubbermaid Inc. v. Storm*, 2014 WL 1266827 (Del. Ch. Mar. 27, 2014) (citing screenshots documenting how users had to "click a box next to a sentence in bold reading: 'I have read and agree to the terms of the Grant Agreement," among other "clear terms that would place a user on actual notice that she was assenting to an agreement"). Even the lonely California case where a district court enforced an arbitration agreement and the "interface contained hyperlink to terms in disclosure directly below button" is distinguishable; there, the "See My Rates" button was followed by a statement, "By clicking See My Rates, you agree to the following: to AmOne's Privacy Notice, Terms of Use and Consent to Receive Electronic Communications." *Pizarro v. QuinStreet, Inc.*, No. 22-CV-02803-MMC, 2022 WL 3357838, at *1 (N.D. Cal. Aug. 15, 2022). Here, by contrast, the "Submit" button is followed by lengthy text explaining how clicking "Submit" authorizes Hear.com's mobile communications; the agreement to the Mobile Terms is buried in the fine print. After *Tejon*, this is insufficient notice.

Under Florida law, "a clickwrap agreement occurs when a website directs a purchaser or user to the terms and conditions of the sale and requires the user to click a box to acknowledge that they have read those terms and conditions." *Id.* at *10 (citation omitted). The defining feature is a discrete act—the "I agree" checkbox—confirming that the user has read and accepted the terms. *Valiente*, 2023 WL 6213583, at *10. Hear.com's sign-up page has no checkbox. The sign-up page contains only "a single input field for a phone number, a Submit button, and disclosure text," with no checkbox and no step by which the user confirms he has read or accepted the Mobile Terms. Jain Decl. ¶ 10, Ex. A. The "Submit" button's function is to transmit a phone number and "reserve [a] no-risk hearing aid trial," not to accept a contract. *Id.*

That Hear.com's disclosure recites that the user "agree[s] to our … Terms & Conditions" does not supply the missing element. *Valiente* required *both* that the user be directed to the terms *and* that he be "asked to represent that he read the Terms of Use," and the absence of any such acknowledgment was dispositive: "Because [the plaintiff] was never directed to the Terms of Use—and since he was never asked to represent that he read the Terms of Use—we reject [defendant's] clickwrap theory." *Valiente*, 2023 WL 6213583, at *13.

What Hear.com built—an ordinary action button paired with fine print stating that clicking it also manifests agreement to separately hyperlinked terms—is not a clickwrap agreement. Because it requires no discrete act of acceptance, it carries none of the assurance of assent that makes a true clickwrap enforceable and, as with all browsewrap agreements, binds only if the hyperlinked terms are conspicuous enough to place a reasonably prudent user on inquiry notice. "[M]erely clicking on a button on a webpage, viewed in the abstract, does not signify a user's agreement to anything." *Berman*, 30 F.4th at 857; *accord Mochan v. Madison Reed, Inc.*, 2023

WL 5266322, at *2–3 (S.D. Fla. July 19, 2023) (denying arbitration where a "Confirm Booking" button sat above conspicuous hyperlinks).

Hear.com's generic reference to "Terms & Conditions" under the "submit" button does not cure the deficient notice. It neither identifies arbitration nor otherwise alerts users that submitting a phone number would purportedly waive judicial and class procedures. *See Goldstein*, 2021 WL 6617447, at *4 (finding the language used on the website "insufficient to place a reasonable user on notice that completing a purchase represents a waiver of the user's right to file a lawsuit" because it "only contains a hyperlink to [defendant's] Terms and Policies without referencing the arbitration agreement at all"). That omission reinforces the conclusion that the page did not place a reasonable user on notice that clicking "Submit" manifested assent to arbitrate.[3]

Because Hear.com's design is not a clickwrap under this Court's own precedent, fails the conspicuousness standard that governs browsewraps, and is insufficient to place a reasonable user on notice that submitting their phone number to receive mobile communications represents a waiver of their right to file a lawsuit, Hear.com has not carried its burden of proving an agreement to arbitrate, and the Motion should be denied.

## II. THE COURT SHOULD DENY THE MOTION BECAUSE THE ARBITRATION PROVISION, INCLUDING ITS DELEGATION CLAUSE, DOES NOT COVER PLAINTIFFS' WIRETAP CLAIMS

Hear.com argues that questions of arbitrability should be delegated to an arbitrator. "As with any arbitration agreement, before enforcing a delegation agreement, a court should ensure

---

[3] Hear.com's reliance on the Complaint changes nothing. That Plaintiffs acknowledged a "reference to Hear.com's … Terms and Conditions" "at the very final stage of the Questionnaire," Compl. ¶ 65; Mot. 12, is not an admission of assent to arbitrate; a bare reference is exactly what the inquiry-notice and incorporation cases hold insufficient. And Plaintiffs' allegation that users "are not required to affirmatively agree to Hear.com's … Terms and Conditions before completing the Questionnaire," Compl. ¶ 90, is confirmed by the design: there is no "I agree" checkbox and clicking "Submit" to reserve a trial is not affirmative agreement to a collateral arbitration clause.

that the agreement was formed, *that it applies to the dispute at hand*, and that no grounds render it invalid or unenforceable." *Attix*, 35 F.4th at 1295 (emphasis added).

Here, the Court should not enforce or apply any purported delegation clause because, as shown above, there is no evidence Plaintiffs ever agreed to the Mobile Terms and, therefore, they never agreed to the delegation agreement within the Mobile Terms. But even if Plaintiffs agreed to the Mobile Terms, the Court should still determine whether the delegation provision contained therein reaches this dispute because the agreement limits arbitration and delegation to claims arising out of or relating to the Mobile Terms or "mobile communications." *See id.*; *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 320–23 (2d Cir. 2021) (holding that a court—not the arbitrator—must decide arbitrability where the agreement limits arbitration to a defined subset of disputes and the claim arguably falls outside that subset, notwithstanding incorporation of AAA rules authorizing arbitrators to determine their own jurisdiction). To state the obvious, this dispute does *not* arise out of or relate to the Mobile Terms or mobile communications. As a matter of contract law, the delegation clause on which Hear.com relies reaches only a defined class of controversies, none of which include Plaintiffs'.[4]

**A. The Delegation Clause Is Limited in Scope, so the Court Must Decide Whether It Reaches Plaintiff's Claims**

Unlike ordinary scope questions, courts "resolve ambiguities in an agreement to arbitrate questions about the arbitrability of those claims in favor of the party opposing arbitration" and "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and

[4] If the Court finds assent, the Mobile Terms' Delaware choice-of-law provision may govern their interpretation. But Delaware and Florida apply the same basic textual principles relevant here: both enforce unambiguous language, give defined terms their stated meaning, and read the agreement as a whole. Under either State's law, "mobile communications" means the calls and messages described in Section A, not website-tracking transmissions.

unmistakable evidence they did so." *Attix*, 35 F.4th at 1296. The Eleventh Circuit recognizes that parties may "delegate *some* questions of arbitrability to an arbitrator but *not others*," and that a genuine qualifying phrase may limit a delegation clause's scope, leaving nondelegated questions for the court. *Id.* at 1298–1300 (emphasis added). Although the Court in *Attix* found no such limitation in the language before it, Hear.com used materially different syntax here.

The delegation clause here is expressly scope-limited. Section H does not separately state that an arbitrator shall decide *every* issue of arbitrability. It provides that a controversy "arising out of or relating to" three specified subjects shall be arbitrated, "*including*" a controversy regarding the "suitability" of a claim for arbitration. Mobile Terms § H (emphasis added). The word "including" supplies an example within the antecedent categories; it does not eliminate those categories' express limits. Thus, the delegation presupposes that the controversy already falls within the defined classes of arbitrable categories, or at least there is a dispute thereon; it does not subsume the antecedent clauses.

Where a qualifying provision at least arguably excludes the dispute, clear-and-unmistakable delegation is absent, and the court decides whether a claim is arbitrable. *See DDK Hotels*, 6 F.4th at 320–23. The dispositive question for the Court, therefore, is whether Plaintiffs' claims fall within the limited categories of disputes the parties actually delegated. They do not.

**B. Plaintiff's Wiretap Claims Are Outside the Scope of the Delegation Agreement**

Here, the scope of the arbitration provision turns on a narrowly defined term: "mobile communications." Section A defines "mobile communications" as the option to "receive information and marketing materials … via calls or messages to your mobile device using a mobile phone number you provide to hear.com." Mobile Terms § A. The term means calls and text messages sent by Hear.com to a mobile device—not website tracking technology, and not the data

a user transmits while browsing. Every operative provision uses it that way, and the document on which Hear.com is titled the "Mobile Communications Terms and Conditions." Hear.com's motion asks the Court to stretch that clearly defined term beyond recognition.

Two textual features confirm the claims fall outside the arbitration clause. The provision reaches only communications "sent by or on behalf of hear.com"—outbound messages—yet Plaintiffs' claims concern inbound data they transmitted to the Website. *See* Mobile Terms § H. And the interception was complete during browsing and questionnaire completion, before any call or text ever issued. Hear.com's own declaration confirms the gap: it states that clicking Submit is "the mechanism by which users sign up to receive mobile communications … within the meaning of the Terms," Jain Decl. ¶17—a step to receive future, outbound messages.

The claims are equally immune to the clause's other two subjects—a controversy "arising out of or relating to" the Mobile Terms or "the breach thereof." Terms § H. Even the broad "relating to" language requires a "contractual nexus": the claim must "requir[e] either reference to, or construction of, a portion of the contract, or emanate[] from an inimitable duty created by the parties' unique contractual relationship." *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013). There is no such nexus where the claim "pertains to the breach of a duty otherwise imposed by law, such as a duty owed not only to the contracting parties but also to third parties and the public." *Id.*

That describes this case exactly. The FSCA and ECPA impose duties not to intercept and disclose electronic communications without consent—duties "imposed by law in recognition of public policy and ... generally owed to others besides the contracting parties"—so a claim to enforce them "is not one arising from the contract, but sounds in tort." *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 638 (Fla. 1999). And the "mere coincidence that the parties ... have a contractual

relationship," or that the dispute "would not have arisen but for the existence of the contract," is "insufficient by itself." *Id.* at 637–38. Eleventh Circuit law is the same: a claim falls outside the clause where the defendant "could have engaged in that tortious conduct even in the absence of any contractual ... relationship," and where the parties "could have performed the ... contract perfectly ... and still be embroiled in this dispute." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218–19 (11th Cir. 2011); *accord Telecom Italia, S.p.A. v. Wholesale Tel. Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001).

Plaintiffs' claims fit precisely: Hear.com could have deployed the challenged tracking technology with no messaging agreement at all; much of the challenged interception—including transmission of questionnaire responses—occurred before users reached the sign-up page or purportedly entered any mobile-communications agreement; and the substantive elements of the claims do not depend on any promise governing future calls or texts. Hear.com's theory only confirms the point. It ties the claims to the Mobile Terms by recasting signup as the contract-forming event—the incidental but-for overlap *Seifert* holds insufficient—not by identifying a contractual duty on which the claims depend.

Because Plaintiffs' claims do not arise out of the Mobile Terms or "mobile communications sent by or on behalf of hear.com," they fall outside the limited delegation agreement itself. The Court should therefore decide arbitrability and deny the Motion.

### C. Incorporation of the AAA Rules Does Not Require Delegation Because the Limited-Scope Language Governs the General AAA Rule Providing the Arbitrator with Authority to Determine Arbitrability

Hear.com's reliance on the AAA Rules fails for similar reasons. The Rules cannot expand the limited delegation agreement Defendant wrote. Hear.com assumes the very point in dispute by invoking the AAA Rules to decide whether the AAA Rules apply. It argues that because the Terms

incorporate the AAA rules, "'the parties clearly agree[] that the arbitrator should decide' issues of arbitrability." Mot. at 13 (citing *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005)). But *Terminix* involved a broad clause reaching all disputes, not an agreement that first limits the universe of arbitrable controversies before incorporating the Rules.

That distinction is dispositive. The AAA Rules do not operate independently of the agreement; they govern only the disputes the parties agreed to arbitrate—here, only a "controversy arising out of or relating to these Mobile Terms or mobile communications sent by or on behalf of hear.com." Mobile Terms § H. The Rules therefore apply only if this controversy falls within that limited class of disputes.

When confronted with a materially identical structure in *DDK Hotels*, the Second Circuit held that incorporating the AAA Rules did not clearly delegate arbitrability because their application "turn[ed] on the conditional premise" that the dispute fell within the arbitrable class; because the dispute did not, "then the AAA Rules do not govern and no delegation of authority to the arbitrator to resolve questions of arbitrability arises." *Id*. at 321. Here, because Plaintiffs' website-wiretap claims fall outside the delegation clause, the controversy never enters the class the AAA Rules govern, even assuming *arguendo* Plaintiffs assented to the Mobile Terms at all.

### D. Because Plaintiffs' Claims Fall Outside the Arbitration Agreement, the Court Should Deny the Motion

Because the limited delegation provision does not reach this controversy, the Court must decide whether Plaintiffs' claims fall within the underlying arbitration provision. They do not. The provision covers only controversies arising out of the Mobile Terms, their breach, or mobile communications sent by Hear.com. Plaintiffs' statutory claims do not; they arise from Hear.com's interception of website communications before any call or text was sent, require no interpretation of the Mobile Terms, and enforce duties existing independently of them. Extending the arbitration

provision to these claims would transform an agreement governing calls and texts into an agreement covering every dispute connected to Hear.com's website—a result the average consumer filling out the questionnaire, and even reviewing the Mobile Terms' exact language, would find flabbergasting.

Because Plaintiffs' claims fall outside the scope of the arbitration agreement itself, the Court should deny Hear.com's motion to compel arbitration. *See Calderon v. Six Rent a Car, LLC*, 5 F.4th 1204 (11th Cir. 2021) (affirming denial of motion to compel arbitration because claims fell "outside of the scope" of a website Terms of Use, and rejected any strong pro-arbitration tie-breaker on scope); *Kennedy v. Slockett*, 414 So. 3d 318, 321–22 (Fla. 2d DCA 2025) (reversing order compelling arbitration because plaintiff's claims were "unrelated to the parties' contractual relationship" and "do not rely upon, or require reference to," the contract containing the arbitration provision); *Dewees v. Johnson*, 329 So. 3d 765, 772 (Fla. 4th DCA 2021) ("Because [plaintiff's] negligence and breach of duty claims have no significant relationship with the Purchase Contract containing the arbitration provision, the claims are not subject to arbitration."); *Verizon Wireless Pers. Commc'ns, LP v. Bateman*, 264 So. 2d 345 (Fla. 2d DCA 2019) (finding a broad "relates to or arises out of" clause did not reach independent statutory claims).

**CONCLUSION**

The Court should deny the Motion because Hear.com fails to prove that Plaintiffs agreed to arbitrate and because Plaintiffs' wiretap claims are outside the scope of Hear.com's Mobile Terms.

Dated: July 24, 2026

Respectfully submitted,

By: *<u>/s/ Adam A. Schwartzbaum</u>*

Adam Schwartzbaum, Esq.
Florida Bar No. 93014

**SCHWARTZBAUM**
14 NE 1st Ave Ste 705
Miami, FL 33132
Telephone: 786-453-8485
Primary Email: adam@schwartzbaum.com
Secondary Email:
admin@schwartzbaum.com

*Counsel for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of July, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Adam A. Schwartzbaum*
Adam A. Schwartzbaum