**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

MARC ALAN REICHBART and MICHAEL B. GARTNER, individually, and on behalf of all others similarly situated,

Plaintiffs,

v. Case No. 1:26-cv-23441

HEAR.COM LLC,

Defendant.

---

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL INDIVIDUAL ARBITRATION**

# TABLE OF CONTENTS

INTRODUCTION ........ 1
ARGUMENT ........ 2
A. PLAINTIFFS FORMED A BINDING AGREEMENT TO ARBITRATE. ........ 2
1. This case is a textbook example of enforceable sign-in wrap. ........ 2
2. Plaintiffs impermissibly ignore the governing sign-in wrap standard. ........ 4
3. Plaintiffs fail to rebut Hear.com's showing of conspicuousness. ........ 5
B. WHETHER THE ARBITRATION AGREEMENT ENCOMPASSES THIS DISPUTE IS RESERVED FOR THE ARBITRATOR. ........ 9
CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Attix v. Carrington Mortgage Services, LLC*,
35 F.4th 1284 (11th Cir. 2022) .......... 9, 10

*Babcock v. Neutron Holdings, Inc.*,
454 F. Supp. 3d 1222 (S.D. Fla. 2020) .......... 2, 3, 4, 5, 6

*Bell v. Royal Seas Cruises, Inc.*,
2020 WL 5742189 (S.D. Fla. May 13, 2020) .......... 7

*Bell v. Royal Seas Cruises, Inc.*,
2020 WL 5639947 (S.D. Fla. Sept. 21, 2020) .......... 5

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
6 F.4th 308 (2d Cir. 2021) .......... 10

*Goldstein v. Fandango Media, LLC*,
2021 WL 6617447 (S.D. Fla. July 27, 2021) .......... 8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) .......... 1, 9, 10

*Martin v. Lens.com, Inc.*,
2024 WL 4826048 (S.D. Fla. Nov. 19, 2024) .......... 6, 7, 9

*Meyer v. Uber Technologies, Inc.*,
868 F.3d 66 (2d Cir. 2017) .......... 4, 5, 6, 7, 8

*Miami Dolphins, Ltd. v. Engwiller*,
410 So. 3d 685 (Fla. Dist. Ct. App. 2025) .......... 2

*Nail v. Lens.com, Inc.*,
2024 WL 3723912 (C.D. Cal. June 20, 2024) .......... 9

*Rogolino v. Walmart, Inc.*,
2025 WL 396453 (S.D. Fla. Feb. 4, 2025) .......... 9

*Tejon v. Zeus Networks, LLC*,
174 F.4th 1322 (11th Cir. 2026) .......... 6, 7, 8

*Valiente v. Nexgen Global, LLC*,
2023 WL 6213583 (S.D. Fla. Sept. 25, 2023) .......... 5

*Vitacost.com, Inc. v. McCants*,
210 So. 3d 761 (Fla. Dist. Ct. App. 2017) .......... 7

*Zarfati v. Artsana USA, Inc.*,
2025 WL 373081 (S.D. Fla. Jan. 15, 2025) .......... 7

# INTRODUCTION

This case presents a textbook example of enforceable sign-in wrap terms, a type of internet agreement formed when users register for a service (*e.g.*, Hear.com's hearing aid trial) after being conspicuously informed that doing so would constitute assent to hyperlinked Terms of Service ("Terms"). Plaintiffs spend most of their opposition brief ducking the governing sign-in wrap standard and its broad body of case law, instead invoking distinct "browsewrap" and "clickwrap" frameworks that have no application here. When Plaintiffs finally engage with the proper standard, they attempt to impugn Hear.com's contractual disclosures by drawing flawed analogies to *Tejon v. Zeus Networks, LLC*, 174 F.4th 1322 (11th Cir. 2026), a case with significantly different facts that actually underscore how conspicuous Hear.com's disclosures were.

Plaintiffs again ignore the governing legal standard when they ask this Court to resolve the arbitrability of their claims. The Terms expressly delegate to the arbitrator all disputes over "the suitability" of claims "for arbitration." The parties have exactly that sort of dispute here, with Hear.com contending—and Plaintiffs disputing—that the claims relate to Plaintiffs' registration for mobile communications with Hear.com. While Hear.com should prevail, the issue is for the arbitrator, not this Court, to resolve. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019), ruled that courts must enforce express delegation clauses regardless of the apparent merits of the arbitrability issue. In seeking a judicial decision on arbitrability, Plaintiffs urge this Court to defy clear-cut Supreme Court precedent and render the Terms' delegation clause meaningless.

The Court should decline that invitation, compel individual arbitration under the Terms, and stay this action pending completion of arbitration.

## ARGUMENT

### A. PLAINTIFFS FORMED A BINDING AGREEMENT TO ARBITRATE.

#### 1. This case is a textbook example of enforceable sign-in wrap.

Plaintiffs accepted the Terms' arbitration clause through a well-established type of contract formation: "sign-in wrap." *Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222, 1230 (S.D. Fla. 2020). Under that framework, a binding contract is formed "where a user signs up to use an internet product or service, and the sign-up screen states that 'acceptance of a separate agreement is required before the user can access the service,'" such that clicking the sign-up button doubles as an act of contractual assent. *Id.* Sign-in wrap is distinct from two other forms of internet contract formation: "browsewraps," where the only act of contractual assent is use of a website, and "clickwraps," where the user clicks a box or button dedicated to confirming contractual assent. *Id.*; *see Miami Dolphins, Ltd. v. Engwiller*, 410 So. 3d 685, 689 (Fla. Dist. Ct. App. 2025) (sign-in wrap agreement is neither a "clickwrap agreement … nor … a pure browsewrap agreement").

One essential feature of the sign-in wrap standard is that users need not read the linked contract in order to be bound by its terms. As long as the disclosure of the contract is sufficiently conspicuous, the user is on "inquiry notice" of, and assents to, its provisions. *Babcock*, 454 F. Supp. 3d at 1231. "Although 'few people may take time to actually read the user agreements ... ignorance of the precise terms does not mean that consumers are unaware they are entering contracts by signing up for internet-based services.'" *Id.* To the contrary: "[A]ny reasonably-active adult consumer will almost certainly appreciate that by signing up for a particular service, he or she is accepting the terms and conditions of the provider." *Id.*

This is a straightforward sign-in wrap case. Plaintiffs admit registering for a hearing aid trial by completing a questionnaire that culminated in a registration page. They simply assert that they did so on their smartphones rather than desktop computers, yielding this version of the page:




Opp. Ex. 3. Plaintiffs contend that the contractual disclosure on this screen is somehow "less conspicuous" than the desktop version. Opp. 5. That is wrong: The mobile version also made clear "that by signing up" for this "particular service," Plaintiffs were "accepting the terms and conditions of the provider." *Babcock*, 454 F. Supp. 3d at 1231. Directly below the "Submit" button, the registration page explained: "By clicking 'Submit' … You agree to our Privacy Policy and Terms & Conditions." The underlined "Terms & Conditions" hyperlink led directly to the full contract, including its arbitration provision. Jain Decl. ¶¶ 12–13. Hear.com's registration page even ***reiterated*** that Plaintiffs should read the "Terms & Conditions for more options." This is exactly the type of disclosure "conspicuous enough to put a reasonably prudent smartphone user on inquiry notice of the Arbitration Provision." *Babcock*, 454 F. Supp. 3d at 1231.

**2. Plaintiffs impermissibly ignore the governing sign-in wrap standard.**

Plaintiffs oppose Hear.com's Motion by pretending the sign-in wrap standard for contract formation does not exist. Their opposition brief argues that Hear.com's registration page fails to satisfy two distinct, inapplicable frameworks: "browsewrap," Opp. 10–12, and "clickwrap," Opp. 12–14. As cases like *Babcock* emphasize, those frameworks simply do not govern this sort of case. "Deciding whether [Plaintiffs] assented to the Arbitration Provision starts with determining where the [Terms of Service] falls among the variations of web-based contracts." *Babcock*, 454 F. Supp. 3d at 1230. This is unmistakably a sign-in wrap case, not browsewrap or clickwrap.

This basic error pervades the opposition brief (and seems to explain Plaintiffs' baseless suggestion that the Motion is somehow "inconsistent with [Hear.com's] sworn discovery responses," Opp. 1). Plaintiffs complain that "no user was 'required to click a box, check a box, or otherwise take any action affirmatively stating that the user agreed to the Terms ***before*** clicking the 'Submit' button." Opp. 5 (emphasis added). While that may be true, the sign-in wrap standard does not require clicking a box expressly dedicated to contractual agreement. The crux of the sign-in wrap framework is that pressing a sign-up button—here, "Submit"—***doubles*** as a manifestation of contractual assent in light of conspicuous disclosures to that effect, without the need for an additional box-click. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80 (2d Cir. 2017) ("the register button had two functions—creation of a user account and assent to the Terms of Service").

Plaintiffs also mistakenly claim not to be bound because "the user need not click" the "hyperlink" on the registration page, Opp. 10, and because they "have submitted declarations confirming that they never opened, read, or agreed to the Mobile Terms, including the arbitration provision," Opp. 7. As *Babcock* explained, the sign-in wrap standard does not require actual reading—just "inquiry notice." That is why "ignorance of the precise terms does not mean that consumers are unaware they are entering contracts by signing up for internet-based services."

*Babcock*, 454 F. Supp. 3d at 1231 (quotation marks omitted).

Plaintiffs stray even further from the sign-in wrap standard by faulting the registration page's disclosures for failing to "contain the word 'arbitration'" or "state that a user waives the right to a trial by jury or the right to participate in a class action.'" Opp. 6. In Plaintiffs' telling, there was no "formation of a contract" because Plaintiffs could find the arbitration clause only by "browsing of the hyperlinked Mobile Terms." Opp. 9. That is not the law. Courts in this District and across the country have held that if a company adequately discloses its governing terms ***as a whole***, then users accept ***all*** of those terms, including any arbitration clause. *See, e.g.*, *Babcock*, 454 F. Supp. 3d at 1230–31 (conspicuous "hyperlink to the User Agreement's terms," "where the user could read the full Arbitration Provision," sufficed "to put a reasonably prudent smartphone user on inquiry notice of the Arbitration Provision"); *Bell v. Royal Seas Cruises, Inc.*, 2020 WL 5639947, at *6 (S.D. Fla. Sept. 21, 2020) (same for "sufficiently conspicuous" "hyperlink" to full terms); *Meyer*, 868 F.3d at 80 (same).

Plaintiffs mischaracterize browsewrap decisions like *Valiente v. Nexgen Global, LLC*, 2023 WL 6213583 (S.D. Fla. Sept. 25, 2023), as assessing "materially similar facts." Opp. 10. But the defendant there sought to enforce a contract solely because "[t]he bottom of [its] website included a hyperlink to [the] 'Terms of Use,'" with no additional text. 2023 WL 6213583, at *1. ***That*** is a browsewrap theory; Hear.com's sign-in wrap terms are entirely different.

**3. <u>Plaintiffs fail to rebut Hear.com's showing of conspicuousness.</u>**

Once those distortions of governing law are set aside, Plaintiffs offer just one argument against sign-in wrap contract formation—that although Hear.com's registration page said the right things, it did not format them conspicuously enough. This argument leans heavily on a misreading of *Tejon*, a case that Plaintiffs present as a "verbatim" match for this one, Opp. 10, but which actually differs in ways that underscore the sufficiency of Hear.com's disclosures.

As *Tejon* reiterated, no particular formatting choice "is individually required to pass a conspicuousness assessment." 174 F.4th at 1328. What matters is whether the overall presentation is clear enough to place a reasonable consumer on inquiry notice, a "fact-intensive inquiry" specific to each case. *Babcock*, 454 F. Supp. 3d at 1230. As the Motion explained, Hear.com's contractual disclosures were conspicuous in several ways that, taken together, clarified for users that clicking "Submit" would constitute acceptance of the Terms. The registration page is "uncluttered," with only a field for the user's phone number, a single "Submit" button, and the accompanying paragraph of disclosure. *See Tejon*, 174 F.4th at 1328 (quoting *Meyer*, 868 F.3d at 78). The contractual disclosure "appears directly below" the "Submit" button, and "[t]he entire screen is visible at once," with no "need to scroll beyond what is immediately visible to find notice of the Terms." *Meyer*, 868 F.3d at 78; *see supra* 3. On top of that, "[a]though the [disclosure] is in a small font," its near-black text clearly "contrasts with" the "bright white background," *Meyer*, 868 F.3d at 78, and stands out more sharply than the lighter grey elements above. *Supra* 3. Indeed, the disclosure takes up half the screen on a mobile device, making it strikingly hard to miss. *Id.*

Against the weight of all those conspicuous design features, Plaintiffs offer just three narrow complaints. ***First***, they fault Hear.com's registration page for placing the contractual disclosure immediately below, rather than immediately above, the "Submit" button. Opp. 10. But when assessing conspicuousness, there is no "bright-line rule such that a hyperlink to contract terms is deemed inconspicuous solely because it is positioned below an action button." *Martin v. Lens.com, Inc.*, 2024 WL 4826048, at *5 (S.D. Fla. Nov. 19, 2024). What matters, as *Meyer* emphasized, is that the contractual disclosure is "spatially coupled" to the button in a way that conveys to users that they relate to each other. 868 F.3d at 78. That coupling can happen whether the contractual disclosure is right below or right above the button, which is why *Meyer* and a range

of similar decisions, including in this District, have enforced sign-in wrap terms based on disclosures "directly below" the relevant buttons. *Id.*; *see, e.g.*, *Martin*, 2024 WL 4826048, at *5 (contractual "hyperlinks and text immediately below the buttons" sufficiently conspicuous). Concerns arise only when a contractual disclosure is somehow "buried at the bottom of the page" in a way that makes it less likely users will understand its connection to the screen's action button. *Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 765 (Fla. Dist. Ct. App. 2017) (isolated link at bottom of webpage insufficiently conspicuous); *see Zarfati v. Artsana USA, Inc.*, 2025 WL 373081, at *7 (S.D. Fla. Jan. 15, 2025) (collecting cases); *Bell v. Royal Seas Cruises, Inc.*, 2020 WL 5742189, at *7 (S.D. Fla. May 13, 2020) (companies cannot "'tuck away' the Terms and Conditions in an obscure corner of the Website where a user is unlikely to encounter them").

To the extent Plaintiffs read *Tejon* to say otherwise, they misconstrue the decision. Far from rejecting the consensus approach, *Tejon* ***approvingly cited*** *Meyer*. *See Tejon*, 174 F.4th at 1328; *id.* at 1335 (Branch, J., dissenting) (noting the majority opinion "rests significant portions of its analysis" on *Meyer*, among other decisions). The *Tejon* paragraph that Plaintiffs cite also quoted *Vitacost.com*'s warning that a contractual disclosure should not be "buried at the bottom of the page." *Id.* at 1327 (quoting *Vitacost.com*, 210 So. 3d at 765). In short, *Tejon* never held that a disclosure immediately below an action button is not conspicuous; it simply reiterated that a disclosure must be adequately ***coupled*** to the button.

*Tejon*'s concern on that score was narrow and case-specific: The particular contractual disclosure at issue was insufficiently coupled because it appeared in "a ***dim, gray*** color" beneath "***two large, red*** action buttons that were prominently featured at the center of the page." *Id.* (emphasis added). *Tejon* worried that the size, number, and striking color of those buttons might lead users to stop there without evaluating the faded text further down the page. *Id.* There is no

parallel problem here. Just the opposite: Hear.com's registration page presented users with a single "Submit" button rendered in a faded gray color. *Supra* 3. The darker contractual disclosure directly below attracts visual attention in exactly the way that was missing in *Tejon*.

***Second***, Plaintiffs contend that Hear.com's contractual disclosure, like "the *Tejon* link," was "printed in a small font" and "easy to overlook given the larger font sizes and bolder colors of other elements on the page." Opp. 10–11 (quoting *Tejon*, 174 F.4th at 1327). That analogy fails for similar reasons. *Tejon* found the link "easy to overlook" principally because its "dim, gray" text faded from view next to the "bolder colors" of the "two large, red action buttons." 174 F.4th at 1327. *Goldstein v. Fandango Media, LLC*, 2021 WL 6617447, at *3 (S.D. Fla. July 27, 2021), likewise deemed a link inconspicuous because size and "light grey color render it practically unreadable." Again, Hear.com's registration page reverses all of that: Users were met with a near-black contractual disclosure that visually popped next to the faded gray of the elements above. As *Meyer* soundly explained, a disclosure that "contrasts with" the "bright white background" and surrounding elements is conspicuous even if rendered "in a small font." *Meyer*, 868 F.3d at 78.

***Third***, Plaintiffs contend that Hear.com's contractual disclosure was inconspicuous because "the link 'appear[ed] in a dim, gray color'" and, while underlined, was not rendered in "a contrasting font color" or "capital letters." Opp. 11 (quoting *Tejon*, 174 F.4th at 1327–28). Once more, that gets the facts wrong and obscures a critical distinction between this case and *Tejon*. Hear.com's contractual disclosure was not in dim, gray font that receded from view—it was in near-black font that would attract attention. And it included not one but ***two*** hyperlinks to the Terms, each set off with underlining. Plaintiffs are correct that these links were not further set off with a contrasting color or capital letters. But courts in this District and across the country routinely rule that underlining is sufficient, and *Tejon* did nothing to disturb those rulings. *See,*

*e.g.*, *Rogolino v. Walmart, Inc.*, 2025 WL 396453, at *3 (S.D. Fla. Feb. 4, 2025) ("[t]he Court declines to conclude that a lack of blue font and capitalization overrides the positioning and clarity of the Terms" where "the Terms are underlined, making it clear to the average internet user that they are hyperlinks"); *Martin*, 2024 WL 4826048, at *5 (hyperlink sufficiently conspicuous where underlined "in black font set against a white background"); *Nail v. Lens.com, Inc.*, 2024 WL 3723912, at *4 (C.D. Cal. June 20, 2024) (underlined hyperlinks sufficiently conspicuous even where they "are the same color as the font on the rest of the page").

### B. WHETHER THE ARBITRATION AGREEMENT ENCOMPASSES THIS DISPUTE IS RESERVED FOR THE ARBITRATOR.

Because the Terms are an enforceable sign-in wrap agreement, the Court should delegate all other questions to the arbitrator, including whether Plaintiffs' claims fall within the arbitration agreement's scope. Mot. 9–10. The Terms define the types of claims subject to arbitration, then expressly delegate arbitrability disputes: "Any controversy, dispute, or claim arising out of or relating to these hear.com Mobile Communications Terms and Conditions, the breach thereof, or mobile communications sent by or on behalf of hear.com—***including the suitability of your or hear.com's claim for arbitration—shall be settled by arbitration*** administered by the American Arbitration Association under its Commercial Arbitration Rules." Jain Decl. Ex. B at 4 (emphasis added). This structure is standard for modern arbitration provisions. For example, the contract in *Attix v. Carrington Mortgage Services, LLC*, 35 F.4th 1284 (11th Cir. 2022), likewise defined types of arbitrable claims (those "arising from or relating to Service or your Payment(s)"), then followed with an express delegation clause ("[t]he arbitrator shall also decide what is subject to arbitration"). *Id.* at 1296–97. *Henry Schein* held that courts "must respect the parties' [delegation] decision as embodied in the contract." 586 U.S. at 65. They may not "short-circuit the process and decide the arbitrability question themselves," even in extreme cases where the argument that

a claim falls within the categories selected for arbitration appears "wholly groundless." *Id.*

Plaintiffs defy that governing framework. They ignore *Henry Schein* and insist this Court should decide arbitrability because "[t]he delegation clause here is expressly scope-limited" and "does not separately state that an arbitrator shall decide *every* issue of arbitrability." Opp. 16. It is not clear what that means. What ***is*** clear is that the Terms define arbitrable claims as those "arising from or related to" specific subjects, then state that any dispute about the suitability of a claim for arbitration also must be arbitrated. Just as in *Attix*, that structure means "the parties clearly and unmistakably agreed to delegate *all* questions of arbitrability." 35 F.4th at 1297. The Motion explained why Hear.com should prevail on the merits of arbitrability—Plaintiffs' claims relate to their registration for mobile communications. Mot. 10–11. But the dispositive point before this Court is that, as in *Attix*, the parties' arbitrability fight is reserved for the arbitrator.

Indeed, if the delegation clause did not apply here, it would ***never*** apply. Plaintiffs ultimately advocate for that absurd result, arguing that "the delegation" of arbitrability disputes to the arbitrator "presupposes that the controversy already falls within the defined classes of arbitrable categories." Opp. 16. In other words, Plaintiffs urge that the delegation clause "presupposes" that the Court has already decided a claim is arbitrable. If that were right, there would be no arbitrability dispute left to delegate, rendering the delegation clause meaningless.

Plaintiffs cannot change any of that by citing *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308 (2d Cir. 2021). *DDK* found that a contract ***without*** an express delegation clause did not delegate arbitrability disputes ***merely*** by incorporating the AAA Rules. *Id.* at 318, 320–21. That has no bearing on the Terms, which contain the express delegation clause missing from *DDK*.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant the Motion and stay this proceeding.

Dated: July 31, 2026

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Diana Marie Fassbender*
Diana Marie Fassbender
Florida Bar No. 17095
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
215 NW 24th St. Suite 200
Miami, Florida 33127
Telephone: 305-913-1930
Email: dszego@orrick.com

Rebecca Harlow, Esq.
Admitted *pro hac vice*
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: 415-773-5700
Email: rharlow@orrick.com